IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| DR. HABIB KARBASIAN, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.   24-cv-1484-RJD |
| | ) | |
| U.S. DEPARTMENT OF STATE, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

**DALY, Magistrate Judge:[1]**

Plaintiffs Dr. Habib Karbasian and his mother, Shohreh Karimnejad, are Iranian nationals who brought this action on June 11, 2024, contending an unreasonable delay in issuing a decision on Ms. Karimnejad's April 2023 application for a B-2 nonimmigrant visa in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 555(b), 7 U.S.C. § 706(1).   (Doc. 1).   They seek an order for Defendants and those acting under them to render a decision on the application without further delay.[2]   (*Id.*).   Defendants filed a Motion to Dismiss Pursuant to Rule 12(b)(6) (Doc. 9) that is now before the Court.   Plaintiffs opposed (Doc. 16) and Defendants replied (Doc. 17).

---

[1] This matter was assigned to the undersigned through the parties' consent to conduct all proceedings, including trial and final entry of judgment, pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73.   (Doc. 13).

[2] On January 21, 2025, Marco Rubio replaced Antony Blinken as Secretary of State.   On January 25, 2025, Kristi Noem replaced Alejandro Mayorkas as the Secretary of the Department of Homeland Security.   Accordingly, pursuant to Federal Rule of Civil Procedure 25(d), Rubio in his official capacity is substituted as a Defendant in place of Blinken, and Noem in her official capacity is substituted as a Defendant in place of Mayorkas.

**Relevant Background**

Because this case is before the Court on a motion to dismiss, the Court accepts Plaintiffs'
well-pled allegations as true for purposes of deciding the motion and draws all reasonable
inferences in Plaintiffs' favor.  *See Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016).   The
Court will also consider "documents attached to the complaint, documents that are critical to the
complaint and referred to in it, and information that is subject to proper judicial notice."  *Concepts
Design Furniture, Inc. v. Fisherbroyles, LLP*, No. 22-2303, 2023 WL 2728816, at *1 (7th Cir.
Mar. 31, 2023) (quoting *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012)).

### 1.  Factual Background

*Complaint Allegations*

The Complaint alleges that Plaintiff Karimnejad is a 67-year-old citizen of Iran, residing
in Iran, who seeks a nonimmigrant B-2 visitor visa so she can visit her son, Plaintiff Karbasian.
(Doc. 1, ¶¶ 1, 11).   Plaintiffs allege Karbasian is a citizen of Iran residing in Carbondale, Illinois.
(*Id.* ¶ 10).   Since 2015, Karimnejad has submitted five separate B-2 visa applications to visit her
son.  (*Id.* at ¶¶ 32-42).   Because the United States does not have a consular post in Iran,
Karimnejad has been required to make "expensive and stressful journeys" outside Iran for each
one of her visa applications.  (*Id.*).   Plaintiffs allege in the Complaint that Karimnejad "remains
on a nine-year quest to obtain *any* decision" to any of her five visa applications because all have
been placed in administrative processing and "never emerged."  (*Id.*).

Specifically, Karimnejad first attended an interview with the Dubai Consulate, on February
17, 2015, regarding her nonimmigrant B-2 visa application (DS-160 number AA004PW6P6),
which was thereafter placed into administrative processing but never emerged.  (*Id.* at ¶¶ 36-37).
She then filed another B-2 visa application (DS-160 number AA006RWUP8), for which she was

interviewed at the U.S. Consulate in Frankfurt, Germany on August 12, 2015, and which was again
placed into administrative processing.  (*Id.* at ¶ 38).  Karimnejad then filed her third B-2 visa
application (DS-160 number AA00UI899) for which she was interviewed on August 29, 2016,
before the U.S. Embassy in Ankara, Turkey, and which was again placed into administrative
processing.  (*Id.* at ¶ 39).  Thereafter, Karimnejad filed her fourth B-2 visa application (DS-160
number AA006RUAIQ) for which she was interviewed at the Dubai Consulate on August 12,
2017, and which was once more placed into administrative processing.  (*Id.* at ¶ 40).  Karimnejad
submitted her most recent B-2 visa application (AA00B9E825) for which she was interviewed at
the Dubai Consulate on April 13, 2023.  (*Id.* at ¶ 41).  Following the interview, Karimnejad was
advised that her application was again placed in administrative processing, and she also received
electronic correspondence from the Consulate requesting additional information from her "in order
to process [her] visa application."  (*Id.* at ¶¶ 42-43; Doc. 1-4, p. 1).  The Consulate explained that
her visa application remained "refused under Section 221(g) of the Immigration and Nationality
Act," the statutory section for administrative processing, "until the required administrative
processing is complete."  (*Id.*)  The correspondence also included the assurance that Karimnejad
would receive another electronic correspondence once the process was concluded.  (*Id.*).

The Consulate requested a series of responses regarding biographic information, including
the visa type she was applying for; her 15-year travel history; her passport history; biographic
information of all close relatives; her 15-year address history; phone numbers, email addresses,
and social-media handles used during the past five years; and her 15-year employment history.
(*Id.* at ¶ 44).  Karbasian responded on behalf of his mother on April 25, 2023, providing the
requested information.  (*Id.* at ¶ 45).  The Consulate responded on that same day that they had
received the required information, and the application would now undergo administrative

processing.   (*Id.* at ¶ 46; Doc. 1-5).   The Consulate's response also added: "we will do all that we can to finish your case in a timely manner," and "[w]e will contact you by email with the final result when the administrative processing is complete."   (Doc. 1-5).

Plaintiffs claim that due to the extended delay in the administrative processing of Karimnejad's visa applications, they have been forced to endure a decade of separation and have suffered significant stress and depression.   (*Id.* at ¶¶ 51-53).   They also point to Karimnejad's "advanced age" as a reason for needing a visa soon.   (*Id.* at 64).

 Plaintiffs also allege that Defendants' failure "to *ever* adjudicate any of her B-2 visa applications to a final decision over the course of nine years" as well as the fact that other similarly situated visa applicants who were interviewed at the Dubai and other consular posts, including those that were initially placed into administrative processing, have received final decisions on their visa applications, suggests that Karimnejad has been singled out for slower adjudication and that Defendants have been acting in bad faith.   (*Id.* at ¶¶ 65-67).   Plaintiffs also contend a second Trump presidency could result in "executive measures restricting the issuance of visitor and other nonimmigrant visas to citizens of Iran."   (*Id.* at ¶ 64).

*Rachel Ann Peterson's Declaration*

Defendants attached to their motion to dismiss a Declaration signed by Rachel Ann Peterson, an employee of the Department of State.   (Doc. 9-1).   Peterson's Declaration puts in dispute material allegations set forth in the Complaint.   Specifically, it represents that only Karimnejad's latest application remains under administrative processing, while for the prior four, the administrative processing has been completed and they were all finally refused on other grounds.   (*Id.*).   The Declaration provides details about the exact grounds for each one of the refusals and the respective dates.   (*Id.*).   Plaintiffs argue that by attaching the Declaration to their

Page **4** of 27

motion, Defendants effectively converted it to one for summary judgment.   (Doc. 16, pp. 12-14).
Thus, they seek dismissal of the motion to allow them sufficient time to conduct discovery.   (*Id.*).

  The Court agrees with Plaintiffs that, at this stage, it may not consider Peterson's
Declaration without converting the motion to dismiss to one for summary judgment.   *See* FED. R.
CIV. P. 12(d); *Fin. Fiduciaries, LLC v. Gannett Co.*, 46 F.4th 654, 663 (7th Cir. 2022) ("If a court
considers matters outside the pleadings, the motion must be treated as one for summary
judgment.") (citation and quotation marks omitted); *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730,
735 (7th Cir. 2002) (explaining that when documents outside the pleadings are attached to a motion
to dismiss "the court must either convert the 12(b)(6) motion into a motion for summary judgment
under Rule 56 ... or exclude the documents attached to the motion to dismiss and continue under
Rule 12.").   At this early stage, and without additional discovery being conducted, the Court is
not willing to convert this motion to one for summary judgment.

  Defendants suggest in a footnote that the Court could take judicial notice of the status of
Karimnejad's past visa applications through the website of the Department of State's Visa Status
Check.   Under Federal Rule of Civil Procedure 201, a court has discretion to take judicial notice
sua sponte of facts that are not "subject to reasonable dispute" because they "can be accurately and
readily determined from sources whose accuracy cannot reasonably be questioned."   FED. R.
EVID. 201(c)(1).   Further, a court must take judicial notice "if a party requests it and the court is
supplied with the necessary information."   *Id.*   The Seventh Circuit has "recognized the authority
of a court to take judicial notice of government websites."   *Pickett v. Sheridan Health Care Ctr.*,
664 F.3d 632, 648 (7th Cir. 2011) (citation omitted).   Here, to populate the status of nonimmigrant
visas filed prior to January 1, 2022, the Department of State's Visa Status Check website requires

the use of the visa application's number along with the location of the visa application.[3]   Utilizing

the application number provided in the Complaint, the website populates information only for three

of Karimnejad's visa applications.   (*See* Doc. 1, pp. 8-9).   Further, for those three visa

applications, the website only states that they have been refused without providing additional

details including the ground of their dismissal.   This detail is crucial because a refused status on

the government's website could possibly include a refusal under Section 221(g) of the Immigration

and Nationality Act ("INA"), which Plaintiffs argue is not final.   Utilizing the government's

website only, without the additional information provided in Peterson's Declaration, the Court

cannot accurately determine the grounds for dismissal and reach conclusions as to the current

status of Karimnejad's visa applications.   In the absence of an explicit request from the

Defendants and considering the uncertain meaning of the populated results, the Court will not

exercise its discretion to take judicial notice of the status of Karimnejad's prior visa applications

as it appears on the Department of State's website.

### 2.   *Statutory and Regulatory Scheme*

The B-2 visa category is for nonimmigrants who will undertake "legitimate activities of a

recreational character" in the United States, "including tourism [and] . . . visits with friends or

relatives . . . ."   22 C.F.R. § 41.31(a) & (b)(2).   Applicants must file a Nonimmigrant Visa

Application (Form DS-160) through the State Department's online portal and then schedule an in-

person interview at a U.S. Embassy or Consulate.   22 C.F.R. § 41.103(a); 8 U.S.C. § 1202(h)(1).

At the interview, a consular officer "shall determine on the basis of the applicant's representations,

the visa application and other relevant documentation . . . the proper nonimmigrant classification

---

[3]   *See Visa Status Check*, U.S. Dep't of State Consular Electronic Application Center,
https://ceac.state.gov/ceacstattracker/status.aspx

. . . and the alien's eligibility to receive a visa."   22 C.F.R. § 41.102(a).   The visa applicant bears the burden of establishing eligibility.   8 U.S.C. § 1361.

If at the time of the interview, the consular officer concludes that the information provided is "inadequate to permit a determination of the alien's eligibility," he may "require the submission of additional necessary information or question an alien on any relevant matter. "   22 C.F.R. § 41.103(b)(2).   The consular officer is further "authorized to require documents considered necessary to establish the alien's eligibility to receive a nonimmigrant visa."   22 C.F.R. § 41.105. The alien's additional statements to the consular officer "become a part of the visa application," and "[a]ll documents required by the consular officer under the authority of § 41.105(a) are considered papers submitted with the alien's application within the meaning of INA 221(g)(1)." 22 C.F.R. § 41.103(b)(2).   "All documents and other evidence presented by the alien . . . shall be considered by the consular officer."   22 C.F.R. § 41.105.

The INA specifically commands that "[a]ll nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer."   INA § 222(d), 8 U.S.C. § 1202(d).   The State Department regulations further require that a consular officer "must ensure" that visa application forms are "properly and promptly processed in accordance with the applicable regulations and instructions."   22 C.F.R. § 41.106.   "When a visa application has been properly completed and executed . . . the consular officer must issue the visa, refuse the visa, or . . . discontinue granting the visa."   22 C.F.R. § 41.121(a).   The refusal of a nonimmigrant visa must be based on legal grounds, which includes INA § 221(g).   *Id.*   Under INA § 221(g), the consular officer shall not issue a visa where "(1) it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa . . . ."   8 U.S.C. § 1201(g); INA § 221(g).   A consular officer who refuses a visa application based on possible

Page **7** of 27

grounds for ineligibility "shall note the reason for the refusal on the application" and "must inform

the alien of the ground(s) of ineligibility . . . and whether there is, in law or regulations, a

mechanism (such as a waiver) to overcome the refusal."   22 C.F.R. § 41.121(a).

The Department of State has further issued the Foreign Affairs Manual ("FAM"), which

"articulates" the State Department's "official guidance, including procedures and policies, on

matters relating to Department management and personnel[.]"   22 C.F.R. § 5.5; *see* 18 FAM §

201.1-1(B).   Under the FAM, a nonimmigrant visa application "must be issued or refused in all

cases once an application has been made."   9 FAM 403.10-2(A).   The FAM further provides that

a nonimmigrant visa applicant "mak[es] a visa application" by (1) submitting and signing a

complete Form DS-160, (2) paying the required application fee, and (3) providing all required

biometric data.   9 FAM 403.2-3(a).   Like the relevant regulation, the FAM provides that "visa

refusals must be based on legal grounds," which include a refusal under INA § 221(g).   9 FAM

403.10-2(A) (a).   The FAM, explains that INA § 221(g) refusals "require" the applicant to either

"wait for the results of additional administrative processing or [to] comply with a request for

additional documentation or information within one year of the visa interview."   9 FAM 403.10-

3(A)(5).   The consular officer should also issue a refusal under INA § 221(g) where the

nonimmigrant visa applicant has made a formal application but "admissibility cannot be

established without additional evidence, further clearance, a name check, or some other reason."   9

FAM 403.10-3(B)(b).   In adjudicating the nonimmigrant visa application, the consular officer

"must conduct as complete a clearance as necessary to establish the eligibility of an applicant to

receive a visa."   9 FAM 403.7-2(4).

 The FAM further instructs that the 221(g) Refusal Letter must:

(a)  **(U)** Explicitly state the provision of the law under which the visa is refused;

(b) **(U)** Not state that the denial is "pending", "temporary", or "interim" or that the case is suspended, although it may reference further administrative processing of the case;

(c) **(U)** Neither encourage nor discourage the applicant from reapplying; and

(d) **(U)** Include the following language:

> Please be advised that for U.S. visa purposes, including ESTA (see ESTA website), this decision constitutes a denial of a visa.

9 FAM 403.10-3(A)(2)(2).

The FAM further guides consular officers on the procedure and requirements for overcoming a nonimmigrant visa applicant's prior refusal. The FAM first notes that it is the U.S. Government's policy "to give the applicant every reasonable opportunity to establish eligibility to receive a visa." 9 FAM 306.2-1**.** It further clarifies that "while the burden of proof to establish eligibility lies with the nonimmigrant visa applicant, the consular officer "should . . . consider any evidence presented to overcome a presumption or finding of ineligibility." *Id.* It cautions, however, that in cases with classified information, the consular officer "should cooperate with the applicant consistent with security considerations and within the reasonable, non-arbitrary, exercise of discretion in the subjective judgments required under INA 214(b) and 221(g)." *Id.*

Specifically, as to refusal under INA § 221(g), the FAM instructs that "when additional evidence is presented, or administrative processing is completed" a consular officer "should find" that the refusal has been overcome. 9 FAM 306.2-2(A)(a)(1); *see also* 9 FAM 403.10-4(B) ("You should find that an applicant has overcome a [nonimmigrant visa] refusal under INA 221(g) in two instances: when the applicant has presented additional evidence that allows you to re-open and re-adjudicate the case, or when the administrative processing on a case is completed. . . . An [nonimmigrant visa] applicant missing a Form I-20 when applying for an F-1 visa, for instance,

should be refused INA 221(g) pending presentation of that certificate . . . [but when] the applicant returns with the document, you should overcome the previous refusal, allowing the case to be adjudicated.).

The FAM then separately explains the process to be followed for each one of the two possible justifications for overcoming a refusal under INA § 221(g). "When the applicant has presented additional evidence to *attempt* to overcome a prior refusal," the consular officer "should re-open and re-adjudicate the case by overcoming the prior INA 221(g) refusal and determining whether the applicant is eligible for a visa." 9 FAM 306.2-2(A)(a)(1)(emphasis added). On the other hand, "a prior INA 221(g) refusal entered for administrative processing may be overcome once [the consular officer] can determine administrative processing is completed and [] receive any required AO response or other needed information." 9 FAM 306.2-2(A)(a)(2). According to the FAM, "[a] refusal under INA 221(g) is, legally, a refusal on a visa application, even if that refusal is eventually overcome." 9 FAM § 302.1-8(B)(c).

The FAM further provides for the reactivation of an alien's nonimmigrant visa application that was previously refused under INA § 221(g) when the alien submits "the requested information" or the necessary clearance is received. 9 FAM 403.10-4(b). In that case, the consular officer "should note the new information or results of the clearance process and issue or refuse the visa" without requesting the payment of an additional filing fee or the submission of a new application. *Id.* However, a new application must be submitted if more than one year has passed since the latest refusal and the delay in the processing is not attributable to any error or lack of action by the U.S. Government. *Id.*

**Legal Standard**

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal if a complaint fails to state a claim upon which relief can be granted. In considering a motion to dismiss, the Court accepts as true all well-pleaded allegations in the complaint and draws all possible inferences in favor of the plaintiff. *See Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007) (quotations omitted). A plaintiff need not set out all relevant facts or recite the law in his or her complaint; however, the plaintiff must provide a short and plain statement that shows that he or she is entitled to relief. *See* FED. R. CIV. P. 8(a)(2). Thus, a complaint will not be dismissed if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At the same time, the plaintiff's allegations cannot "be merely conceivable or speculative," and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Olson v. Randstad HR Sols. of Delaware LLC*, No. 23-2455, 2025 WL 400728, at *2 (7th Cir. Feb. 5, 2025) (citation and internal quotation marks omitted).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atlantic Corp.*, 550 U.S. at 558. Deciding plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Ashcroft*, 556 U.S. at 679)).

**Discussion**

Defendants' motion to dismiss focuses on the most recent of Karimnejad's visa applications, which they argue is the only one that remains in administrative processing. (Doc. 9, pp. 6-7). Defendants raise four main arguments. First, they argue that Plaintiffs fail to state a

claim because the consular officer's refusal of Karimnejad's visa application under INA § 221(g) satisfied any statutory or regulatory duty to adjudicate her case.  (Doc. 9, pp. 7-10).  Second, they argue that the general duty referenced in APA § 555(b), which requires an agency to conclude matters presented to it within reasonable time, does not independently give rise to a claim under APA § 706(1).  (Doc. 9, pp. 9-10).  Third, they contend that the doctrine of consular non-reviewability precludes the Court from reviewing Plaintiffs' claims.  (Doc. 9, pp. 11-13).  Fourth, they allege that any delay in the adjudication of Karimnejad's visa application is reasonable and therefore does not state a viable claim for unreasonable delay under APA § 706(1).  (Doc. 9, pp. 14-17).

### 1.  *Discrete and Non-Discretionary Duty to Act*

Under APA § 706(1), courts are authorized to "compel agency action unlawfully withheld or unreasonably delayed."  5 U.S.C. § 706(1).  However, the Supreme Court has clarified that judicial review under APA § 706(1) is only allowed for the "discrete" actions that are non-discretionary in the sense that the agency is "required to take" them.  *Norton v. Southern Utah Wilderness Alliance (SUWA)*, 542 U.S. 55, 64 (2004).  To determine whether an action is non-discretionary and thus subject to review under APA § 706(1), courts can look not only to statutes, but also to agency regulations that have the force of law.  *Id.* at 65.

In *Norton*, the Supreme Court used 47 U.S.C. § 251(d)(1) as an example of a provision setting forth a discrete and non-discretionary action that could be properly subject to review under APA § 706(1).  The relevant provision states that "[w]ithin 6 months after February 8, 1996, the Commission *shall* complete all actions necessary to establish regulations to implement the requirements of this section."  *Id.* (citing 47 U.S.C. § 251(d)(1) (emphasis added).  The Court explained that § 251(d)(1) "would have supported a judicial decree under the APA requiring the

Page **12** of **27**

prompt issuance of regulations, but not a judicial decree setting forth the content of those regulations."  *Id.*

Here, Defendants argue that the only relevant provisions imposing on a consular officer a discrete and non-discretionary duty to act on Karimnejad's latest visa application are 22 C.F.R. § 41.121(a) & § 41.106.  The former provides that "[w]hen a visa application has been properly completed and executed . . . the consular officer must issue the visa, refuse the visa, or, . . . discontinue granting the visa."  22 C.F.R. § 41.121(a).  The latter requires that a consular officer "ensure[s] that the Forms DS-160 . . . is properly and promptly processed in accordance with the applicable regulations and instructions."  22 C.F.R. § 41.106 (a).  Defendants argue that the consulate officer fulfilled those obligations by issuing the refusal on Karimnejad's latest visa application under INA § 221(g).  They rely on 22 C.F.R. § 41.106, which provides that refusal of a nonimmigrant visa must be based on legal grounds, which include INA § 221(g).  22 C.F.R. § 41.106.  They argue that Plaintiffs have failed to identify any other statutory or regulatory provision that would impose a discrete non-discretionary duty on the government to take any further steps on Karimnejad's already refused visa application.

Plaintiffs, on the other hand, point to INA § 222(d) which provides that "[a]ll nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer."  INA § 222(d), 8 U.S.C. 1202(d).  They argue that refusal under INA § 221(g) for administrative processing is a non-final procedural step that does not dispense the government's non-discretionary duty to finally adjudicate all visa applications.  Accordingly, Plaintiffs claim that this provision, along with APA § 555(b), impose a duty on Defendants to complete the administrative process and issue a final decision on her visa application within reasonable time. Defendants counter that the consulate officer may reconsider its refusal under INA § 221(g)

following administrative processing, but this is a discretionary action that is not subject to judicial review under APA § 706(1).

Both parties point to persuasive authority in support of their respective positions. Defendants rely on *Karimova v. Abate*, No. 23-5178, 2024 WL 3517852, at *2 (D.C. Cir. July 24, 2024) and *Yaghoubnezhad v. Stufft*, 734 F. Supp. 3d 87 (D.D.C. 2024), which they argue stand for the proposition that a refusal under INA § 221(g) fulfills any obligation the consular officer has under the relevant statutes and regulations to adjudicate a visa application.   On the other hand, Plaintiffs rely on *Janay v. Blinken*, 743 F. Supp. 3d 96, 112 (D.D.C. 2024), *Ebrahimi v. Blinken*, 732 F. Supp. 3d 894 (N.D. Ill. 2024), and *Zadeh v. Blinken*, No. 23-CV-3721, 2024 WL 2708324 (N.D. Ill. May 20, 2024), which they argue support the opposite conclusion.

The Court will first address *Karimova*, which appears to be the only appellate court decision addressing the issue.   There, a consular officer refused the plaintiff's application for immigrant visa under INA § 221(g) and placed it in "administrative processing in order to verify qualifications for [her requested] visa."   *Karimova*, No. 23-5178, 2024 WL 3517852, at *2.   A year after the visa was refused and placed in administrative processing, the applicant filed suit under the APA and the Mandamus Act, asking the court to "'compel' the consular officer to perform her duty to finally adjudicate her visa."   *Id.*   She claimed that said duty was not discharged by the refusal under INA § 221(g) for administrative processing because that was not a final decision on her visa application.   *Id.*   As the appellate court noted, the plaintiff solely relied on APA § 555(b), which requires an agency to "conclude a matter presented to it" within a reasonable time, to show that the consulate officer owed a non-discretionary duty to act on her application even after the latter was refused and placed on administrative processing.   *Id.* at *3. The district court granted the government's motion to dismiss the suit, and the United States Court

of Appeals for the District of Columbia affirmed the dismissal.  *Id.* at *3.  The Court of Appeals characterized the applicant's claim as one seeking "the consular officer . . . to either issue her a visa or refuse her application, without then also placing it in administrative processing."  *Id.*  The court then determined that obtaining such relief would first require the showing of a clear duty to act on the already refused application.  *Id.*  The court concluded that APA § 555(b) did not impose on the government a clear non-discretionary duty to further process or adjudicate a visa application once it had been refused by a consular officer under INA § 221(g).  The court explained that "Karimova's argument hinge[d] on defining what it mean[t] to conclude a visa application in a manner that neither a federal statute nor regulation clearly require[d.]"  *Id.* at *4. The court further noted that "nothing in federal law speaks to the ability of a consul, after making that decision, to hold onto the application in case circumstances later change in the applicant's favor, thereby saving the applicant the time and cost of filing a whole new visa application."  *Id.*

For several reasons, the Court does not find *Karimova* persuasive.  First, *Karimova* is an unpublished opinion, and even district courts within the District of Columbia Circuit have refused to follow it.  *See, e.g.*, *Al Saedi v. LeBailly*, No. CV 24-1401 (LLA), 2025 WL 485410, at *3 n.4 (D.D.C. Feb. 13, 2025) (declining the follow *Karimova* noting that "a panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition"); *Ahmed v. Blinken*, No. CV 24-153 (LLA), 2024 WL 4903771, at *4 n.4 (D.D.C. Nov. 27, 2024) (same).  Second, the plaintiff in *Karimova* relied on APA § 555(b) as the sole basis of the consular officer's non-discretionary duty to issue a final adjudication on her visa application.  *Karimova*, No. 23-5178, 2024 WL 3517852, at *3.  Here, on the other hand, Plaintiffs primarily rely on INA § 222(d), which provides that "[a]ll nonimmigrant visa applications shall be reviewed and adjudicated by a consular officer. "  INA § 222(d); 8 U.S.C. § 1202.  Nothing in the *Karimova*

court's opinion indicates that the court considered the duty imposed under INA § 222(d).

Further, the *Karimova* court, dealing with an immigrant visa application, noted that "nothing in the federal law speaks to the ability of a consul, after making that decision, to hold onto the application in case circumstances later change in the applicant's favor, thereby saving the applicant the time and cost of filing a whole new visa application."  *Karimova*, No. 23-5178, 2024 WL 3517852, at *3.   The FAM section governing nonimmigrant visas, however, does provide for a mechanism to reactivate an application previously refused under INA § 221(g) upon production of the requested information by the alien or when the necessary clearance is received.   9 FAM 403.10-4(b).   In that case, the consular officer "should note the new information or results of the clearance process and issue or refuse the visa" without requesting the payment of an additional filing fee or the submission of a new application.   *Id.*   Likewise, "[w]hen the applicant has presented additional evidence to *attempt* to overcome a prior refusal," the consular officer "should re-open and re-adjudicate the case by overcoming the prior INA 221(g) refusal and determining whether the applicant is eligible for a visa."   9 FAM 306.2-2(A)(a)(1) (emphasis added).

Here, the consular officer refused Karimnejad's nonimmigrant visa application under INA § 221(g), but also requested additional information from her, which Karimnejad procured soon thereafter.   In *Karimova*, on the other hand, while the visa application was also refused under INA § 221(g), there was no indication that the consular officer requested, or Karimova provided, any additional information to overcome the refusal.   The *Karimova* court explained that the visa application was placed in "administrative processing in order to verify qualifications for" the requested visa, and that a year later Karimova filed the suit seeking a final decision on her application.   *Karimova*, No. 23-5178, 2024 WL 3517852, at *2.   This is an important distinction. As another district court noted, "[w]here the plain language of the relevant regulation requires

reconsideration when such additional information is submitted, and it is fair to infer at this early stage that the information submitted provided further evidence to overcome the ground of ineligibility," the plaintiffs have sufficiently identified a non-discretionary action that the government has failed to take. *Parva v. Blinken*, No. CV TDC-23-3287, 2024 WL 4042466, at *4 (D. Md. Sept. 4, 2024).

The Court finds that the process of reactivating a nonimmigrant visa application or overcoming its prior refusal for administrative processing, at least where the refusal is accompanied by a request and receipt of additional information to overcome the prior refusal and by assurances of further adjudication to issue a final decision, is part of the adjudication process that a consular officer has a non-discretionary duty to conclude within reasonable time under INA § 222(d) and APA § 555(b). Here, looking at the electronic correspondence Karimnejad received following her interview, the consular officer did not consider Karimnejad's visa application to have been finally adjudicated. The correspondence noted that the consular officer "require[d] additional information from [Karimnejad] in order to process [her] visa application," that her visa application remained refused . . . until the required administrative processing [was] completed," and that she "will receive" an email once that process had concluded. (Doc. 1-4). When Karimnejad responded with the requested information, the consulate officer replied that the application [would now] undergo administrative processing" and "[w]hen the administrative processing . . . is complete" Karimnejad would receive further instructions regarding her visa application. (*Id.* at ¶ 46; Doc. 1-5). The Consulate's response notably added: "we will do all that we can to *finish* your case in a timely manner," and "[w]e will contact you by email with the *final* result when the administrative processing is complete. (Doc. 1-5) (emphasis added). Further assurances for completion of the administrative process and issuance of a final decision derive

from the status of Karimnejad's visa application on the State Department's website, which states that an "officer has adjudicated and refused [her] visa application" but also adding:

> If you were informed by the consular officer that your case was refused for administrative processing, your case will remain refused while undergoing such processing. *You will receive another adjudication once such processing is complete.* Please be advised that the processing time varies and that you will be contacted if additional information is needed.

(Doc. 16-3)(emphasis added).[4]

Based on this information, the Court cannot conclude that the adjudication of Karimnejad's latest visa application is not still ongoing. At least at this stage, the allegations of the Complaint and the information derived from the documents attached thereto are sufficient to plausibly allege the government's discrete and non-discretionary duty to proceed with the final adjudication of Karimnejad's nonimmigrant visa application. As another district court noted, "if the State Department informs an applicant that he 'will receive another adjudication' when the administrative processing is complete, then the State Department is essentially taking the position that the matter submitted to the agency has not been concluded while administrative processing is ongoing." *Hassan v. Dillard*, No. 24-CV-1351 (KMM/LIB), 2024 WL 4979476, at *6 (D. Minn. Dec. 4, 2024)(collecting relevant case law).

Many district courts have reached the same conclusion, explaining that the focus should not be on the form and labeling of a decision as final but rather on the substance and what is actually happening in the case. *See Zadeh*, No. 23-CV-3721, 2024 WL 2708324, at *5 (collecting relevant case law and concluding that "administrative processing precedes a forthcoming final

---

[4] The Court considers this information as it is attached to Plaintiffs' Memorandum in Opposition to the Motion to Dismiss and tends to illustrate Plaintiffs' allegation that adjudication of her visa application is ongoing. *See Geinosky*, 675 F.3d at 745 (noting that "a party opposing a Rule 12(b)(6) motion may submit materials outside the pleadings to illustrate the facts the party expects to be able to prove," without converting the motion to one for summary judgment.).

decision" and that "it is part of the initial visa application process – not a reconsideration of a denial); *Ebrahimi*, 732 F. Supp. 3d at 904 (summarizing relevant case law and adopting the approach that the government's use of the word "will" in its communication with the applicant shows that "the adjudication of the visa application is not yet complete") (cleaned up); *Janay*, 743 F. Supp. 3d at 112 (finding the line of cases following *Yaghoubnezhad*'s approach unpersuasive and agreeing that under INA § 221(g) the application "has only been 'refused' in the far-from-literal sense that it has not yet been 'granted' or 'denied'"); *Hassan*, No. 24-CV-1351 (KMM/LIB), 2024 WL 4979476, at *6 (collecting relevant case law); *Jafarzadeh v. Blinken*, No. 1:23-CV-00770-KJM-CDB, 2024 WL 3937417, at *2 (E.D. Cal. Aug. 26, 2024) (collecting cases finding "the administrative processing designation insufficient to constitute a final decision").

For these reasons, the Court also finds *Yaghoubnezhad* unpersuasive. 734 F. Supp. 3d 87. There, the plaintiffs sought nonimmigrant visas and had their applications refused under INA § 221(g) but argued that the refusal was not "'final' because their applications remain[ed] in 'administrative processing.'" *Id.* The district court concluded that the State had satisfied its duty to adjudicate their applications because the plaintiffs conceded that their visas were refused under INA § 221(g) and had failed to point to any defect with that refusal or to set forth any statute or regulation pointing to additional discrete action that State was required to take. *Id.* at 103. The district court there found that the consular officer satisfied the duty under INA § 222(d) to adjudicate the visa application by refusing the case for further administrative processing. The court, however, did not discuss the FAM sections providing for the reactivation of the visa application and the overcoming of a prior refusal under INA § 221(g). Further, *Yaghoubnezhad* is distinguishable from the case at bar in that unlike Karimnejad, there is no indication that the plaintiffs there had procured additional information attempting to overcome the refusal of their

visa applications under INA § 221(g).  Because here Karimnejad provided information that the
consular officer had deemed necessary to complete review of her visa application, the Court cannot
find that the refusal under INA § 221(g) discharged the consular officer of the duty to promptly
review and adjudicate Karimnejad's nonimmigrant visa application as well as to "consider any
evidence presented to overcome a presumption or finding of ineligibility."  *See* INA § 222(d); 9
FAM 306.2-1**.**  This is especially true given that the consular officer reassured Karimnejad that
she "will contact [her] by email with the *final* result when the administrative processing is
complete."  (Doc. 1-5) (emphasis added).

For the same reasons, the Court finds unpersuasive Defendants' argument, and the
authority cited in support thereto, that INA § 222(d) "only acts to set out what documentation
applicants must provide and to whom it must be provided." (Doc. 17) (citing *Babamuradova v.
Blinken*, 633 F. Supp. 3d 1, 14–15 (D.D.C. 2022); (*Khamrabaeva v. Blinken*, 2022 WL 4446387,
at *5-6 (D.D.C. Sept. 24, 2022); *Zarei v. Blinken*, 2021 WL 9146060, at *1 (D.D.C. Sept. 30,
2021)).  The relevant section provides that a nonimmigrant visa applicant "shall furnish to the
consular officer, with his application, a certified copy of such documents pertaining to him as may
be by regulations required."  INA § 222(d).  It adds, however, that "[a]ll nonimmigrant visa
applications shall be reviewed and adjudicated by a consular officer."  *Id.*  Review and
adjudication require much more than simply accepting an application and the documents attached
thereto.

Therefore, the Court finds that Plaintiffs have sufficiently alleged the government's
discrete and non-discretionary duty to finally adjudicate Karimnejad's most recent nonimmigrant
visa application.   Accordingly, the Court does not need to address Defendants' second ground for
dismissal, namely that the general duty referenced in APA § 555(b), by its own, does not give rise

to a claim under APA § 706(1).

### 2. *Consular Non-reviewability*

Defendants' next ground for dismissal is that the review of this case is barred by the doctrine of consular nonreviewability.  Under that doctrine, "visa decisions made by consular officers abroad are not subject to judicial review."  *Pak v. Biden*, 91 F.4th 896, 900 (7th Cir. 2024) (citing *Hazama v. Tillerson*, 851 F.3d 706, 708 (7th Cir. 2017)).  As the Seventh Circuit explained in *Pak*, the doctrine derives from "separation-of-powers principles." *Id.*  "Congress has delegated the power to determine who may enter the country to the Executive Branch, and courts generally have no authority to second-guess the Executive's decisions." *Id.* (quoting *Yafai v. Pompeo*, 912 F.3d 1018, 1020 (7th Cir. 2019)) (internal quotation marks omitted).  While there is no dispute that the doctrine of consular nonreviewability bars review of a consular officer's final decision to grant or deny issuance of a visa, its application to claims of unreasonable delays under the APA is not that straightforward.

Most courts have concluded that the doctrine does not bar a claim for unreasonable delays in the issuance of a final decision following a refusal of a visa application under INA § 211(g) when there are assurances of further administrative proceedings.  *See Jama v. Wahid*, No. 24-CV-583, 2025 WL 346811, at *5 (E.D. Wis. Jan. 30, 2025) (noting that "section 221(g) refusals often present a unique problem whereby the visa is labeled 'refused' but the refusal exists only in form and not substance," and thus concluding that the consular nonreviewability doctrine did not bar an unreasonable delay claim); *Vang v. Franceschi, et al.*, No. 24-CV-609, 2024 WL 4370855, at *5 (E.D. Wis. Oct. 2, 2024) (summarizing relevant case law and noting that "where a consular officer has refused a visa application under section 221(g) and provided 'assurances of further

adjudication ... courts have overwhelmingly concluded that the doctrine of consular nonreviewability does not apply'"); *Ebrahimi*, 732 F. Supp. 3d at 907 ("where the section 221(g) refusal is followed by assurances of further adjudication . . . courts have overwhelmingly concluded that the doctrine of consular nonreviewability does not apply."); and *Zadeh*, No. 23-CV-3721, 2024 WL 2708324, at *6 (denying a motion to dismiss on the ground of the doctrine of consular nonreviewability noting that refusal of a visa application under section 221(g) was not final decision on the plaintiff's visa application and explaining that where the issue is the delay as opposed to the denial, consular nonreviewability is inapplicable), *Ramizi v. Blinken*, 745 F. Supp. 3d 244, 258 (E.D.N.C. 2024) (doctrine of non-reviewability inapplicable where the plaintiff did not challenge the consular officer's refusal of the visa application but rather the period of post-refusal administrative processing that ensued after the refusal).   On the other hand, a few courts have reached the opposite conclusion.  *See, e.g.*, *Nasir v. United States Dep't of State*, No. 23-C-15738, 2024 WL 4206279 at *3 (N.D. Ill. Sept. 17, 2024) (holding that a section 221(g) refusal is a final adjudication, and thus, dismissing a claim for unreasonable delay based on consular nonreviewability); *Yaghoubnezhad*, 734 F. Supp. 3d at 102 (same), and *Li v. Chertoff*, No. 6-cv-13679, 2007 WL 54197, at *1 (S.D.N.Y. Feb. 16, 2007) (concluding that consular nonreviewability bars claims to compel adjudication of delayed visa).

Defendants primarily rely on *Pak* to argue that a claim for unreasonable delay following a refusal under INA § 221(g) is an "indirect attack" on a visa denial that falls "within the scope of consular nonreviewability."   (Doc. 9, p. 13).   In *Pak*, four Iranian nationals, who had previously completed mandatory military service in Iran's Islamic Revolutionary Guard Corps (IRGC), were denied visas to enter the United States on terrorism-related inadmissibility grounds (TRIG).   *Pak*, 91 F.4th at 898.   Their family members filed a suit for violation of the APA and the Fifth

Amendment's Due Process Clause, challenging the proceeding that led to the denial of the visas and specifically, the fact that applicants were not provided with the opportunity to establish eligibility for certain TRIG exemptions. *Id.* The district court dismissed the suit on the basis of the doctrine of nonreviewability and the plaintiffs appealed. *Id.* at 900. The plaintiffs argued that the doctrine was inapplicable in their case because they did not challenge the consular officer's final decision denying the visa applications but rather the legal structure that prevented the applicants from establishing one of the applicable TRIG exemptions. *Id.* The Seventh Circuit disagreed, finding that the plaintiffs' "effort to circumvent this doctrine" was, in essence, an impermissible "indirect attack" on the visa denial itself because the review of "a TRIG exemption determination" was impossible "without first assessing a consular officer's inadmissibility determination." *Id.* at 900-01. The court further reasoned that what the plaintiffs really wanted was to be granted the TRIG exemption which would change the outcome of the consular officer's final determination. *Id.* at 901.

Unlike in *Pak*, here Plaintiffs do not ask for the grant of their visa application. Further, in light of the consular officer's assurances for further administrative proceedings to reach a "final result," their claim does not necessitate an assessment of a consular officer's final determination. No final determination has been rendered yet. Contrary to Defendants' contention, Plaintiffs merely request that the consular officer render a final decision, either denying or granting Karimnejad's visa application. Accordingly, the Court finds that *Pak* is distinguishable from the case at bar.

Defendants further cite *Yaghoubnezhad,* which concluded that the doctrine of consular nonreviewability barred a claim for unreasonable delay in the final adjudication of noncitizen Iranian nationals, whose applications for nonimmigrant visas were "refused" and sent to

"administrative processing." 734 F. Supp. 3d at 104.   The Court concluded that consular nonreviewability barred the unreasonable delay claim because a court order requiring additional processing of refused applications would require the State Department to reexamine the substance of the consular officers' decision.   As set forth above, however, *Yaghoubnezhad* is distinguishable from this case because the visa applications there were refused under INA § 221(g) and placed in administrative processing without a request for additional information by the applicants. Accordingly, the Court does not find its reasoning persuasive as it applies to the case at bar.

Defendants also cite the recently issued opinion in *Nasir v. State Dept.*, where the District Court for the Northern District of Illinois found that the refusal of an immigrant visa under INA § 221(g) was a final adjudication, even though the applicant had provided additional information requested by the consular officer.   No. 23 C 15738, 2024 WL 4206279, at *3-4 (N.D. Ill. Sept. 17, 2024).   Based on that finding, the district court concluded that judicial review of the State's alleged failure to reach a final adjudication on the plaintiff's visa application was barred under the doctrine of consular non-reviewability.   *Id.* at *4-5.   The Court finds *Nasir* unpersuasive because it did not address the relevant provisions allowing for the overcoming of a refusal under INA § 221(g), for immigrant and nonimmigrant visas, when the applicant comes back with additional information tending to overcome the grounds for the refusal.   *See* 9 FAM 306.2-2(A)(a)(1). Further, the relevant FAM governing Karamirejad's nonimmigrant visa application, clearly provides for reactivation of a visa application previously denied under INA § 221(g) when the applicant comes back with the information requested by the consular officer.   9 FAM 403.10-4(b).   It is not clear whether the FAM governing immigrant visa applications provide for the same reactivation mechanism.   Accordingly, the Court does not find *Nasir*'s reasoning persuasive.

Because the Court has already concluded that based on the allegations of the Complaint,

no final decision has been reached in Karimnejad's nonimmigrant visa application, the Court finds that the doctrine of consular non-reviewability does not bar review of Plaintiffs' claim for unreasonable delay.   In doing so, the Court sides with the majority of the district courts in this Circuit which have found that when an application under INA § 221(g) for administrative processing is accompanied by "assurances of further adjudication" for reaching a final decision, the doctrine of consular nonreviewability does not apply.   *See Jama*, No. 24-CV-583, 2025 WL 346811, at *6 (summarizing relevant case and concluding that "where a consular officer has refused a visa application under section 221(g) and provided 'assurances of further adjudication ... courts have overwhelmingly concluded that the doctrine of consular nonreviewability does not apply.'"); *Vang*, No. 24-CV-609, 2024 WL 4370855, at *5 (same); *Ebrahimi*, 732 F. Supp. 3d at 907 (same).

### 3. *Failure to State an Unreasonable Delay*

Defendants' last ground for dismissal is that the alleged 18-month delay in processing the non-visa application does not amount to an "unreasonable delay" for the purposes of APA § 706(1) of the APA.   While not formally adopted by the Seventh Circuit, district courts within the circuit are utilizing a six-factor test created by the D.C. Circuit to assess whether an agency has unreasonably delayed its actions under that section.   *See Menominee Indian Tribe of Wis.* v. *EPA*, 947 F.3d 1065, 1075 (7th Cir. 2020) (Hamilton, J., concurring) ("The D.C. Circuit has set forth a general framework for deciding claims of agency delay that courts can apply to unanswered rulemaking petitions.") (citing *Telecomms. Research & Action Ctr.* v. *FCC ("TRAC")*, 750 F.2d 70, 80 (D.C. Cir. 1984)); *see also Ebrahimi*, 732 F. Supp. 3d at 909; *Zadeh*, No. 23-CV-3721, 2024 WL 2708324, at *9.   Under the *TRAC* analysis, courts should consider the following six factors in assessing whether an agency's act was unreasonably delayed for purposes of Section

706(a) of the APA:

> (1) the time agencies take to make decisions must be governed by a "rule of reason";
> (2) where Congress has provided a timetable or other indication of the speed with
> which it expects the agency to proceed in the enabling statute, that statutory scheme
> may supply content for this rule of reason; (3) delays that might be reasonable in
> the sphere of economic regulation are less tolerable when human health and welfare
> are at stake; (4) the court should consider the effect of expediting delayed action on
> agency activities of a higher or competing priority; (5) the court should also take
> into account the nature and extent of the interests prejudiced by delay; and (6) the
> court need not "find any impropriety lurking behind agency lassitude in order to
> hold that agency action is 'unreasonably delayed.'

*TRAC*, 750 F.2d at 79 (cleaned up).

The parties seem to agree that the assessment of this issue is based on the *TRAC* factors. They disagree, however, as to whether the *TRAC* analysis is appropriate at the stage of a motion to dismiss.   Particularly, Plaintiffs argue that *TRAC* is a fact-based inquiry that requires additional discovery.  (Doc. 16, pp. 12-16).   They further take issue with Defendants' reliance on Peterson's Declaration, arguing that Defendants improperly convert the motion to dismiss to a motion for summary judgment.  (Doc. 16, pp. 12-14).   Defendants, on the other hand, point to ample authority from this circuit engaging in the *TRAC* analysis at the motion to dismiss stage in a similar context.  (Doc. 17, p. 4.)   They further argue that reliance on the Peterson Declaration is not necessary because the Court can take judicial notice of all relevant information for its *TRAC* analysis.  *Id. (citing Zadeh*, 2024 WL 2708324 at *9 ("from the 35-page complaint and the attached exhibits, the Court has enough information to conduct its *TRAC* analysis" at the motion to dismiss stage); *Ebrahimi*, 732 F. Supp. 3d at 910 (agreeing with defendants that "courts may, of course, undertake [the *TRAC*] an analysis [at the motion to dismiss stage], just as they undertake plausibility analyses with respect to all sorts of elements of all sorts of claims").

As a general matter, the Court agrees that while the *TRAC* analysis is fact-intensive, it may

Page **26** of **27**

also be decided at the motion to dismiss stage based on the allegations asserted in the Complaint and on information that can properly be considered at that stage.   Here, however, in conducting their *TRAC* analysis, Defendants have heavily relied on Peterson's Declaration and on facts that directly contradict the allegations in the Complaint.   Accordingly, the Court concludes that in this case, the *TRAC* analysis would be more appropriate after some discovery has been conducted. *See, e.g.*, *Soroush v. Blinken*, No. 2:24-CV-06490-CAS-JCX, 2025 WL 305837, at *8 (C.D. Cal. Jan. 24, 2025) (collecting case law finding it premature to rule on satisfaction of *TRAC* at the pleading stage).

## Conclusion

Based on the foregoing, Defendants' Motion to Dismiss Pursuant to Rule 12(B)(6) (Doc. 9) is **DENIED**.


**IT IS SO ORDERED.**

**DATED: March 14, 2025**

*s/ Reona J. Daly*

**Hon. Reona J. Daly**
**United States Magistrate Judge**